UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

SHAUN BUCK,

    Plaintiff,

  v.

JUDGE DANIEL STECKEL; ADA
COUNTY; and FOURTH JUDICIAL
DISTRICT COURT OF IDAHO,

    Defendants.

Case No. 1:25-cv-00138-AKB

**MEMORANDUM DECISION
AND ORDER DENYING MOTION
FOR PRELIMINARY INJUNCTION**

Pending before the Court is Plaintiff Shaun Buck's Motion for a Preliminary Injunction (Dkt. 3). For the reasons discussed below, the Court dismisses Buck's complaint against Defendants Judge Daniel Steckel and the Fourth Judicial District Court of Idaho with prejudice and against Defendant Ada County without prejudice and denies the motion as moot.

## I.    BACKGROUND

On October 2, 2024, the Ada County Magistrate Court issued an ex parte protection order against Buck in *Panther v. Buck*, CV01-24-16795 (Ada Cnty. Magis. Ct.) after the plaintiff in that case, Brigitta Panther, filed a petition seeking a no-contact order.[1] Following a hearing on

---

[1]  The Court takes judicial notice under Rule 201 of the Federal Rules of Evidence of the court filings in *Panther v. Buck*, Case No. CV01-24-16795, Ada County Magistrate Court (filed Oct. 2, 2024), in the Idaho iCourt Portal. *See* Fed. R. Evid. 201(b) (providing court may judicially notice fact not subject to reasonable dispute).

October 16, Defendant Judge Steckel granted a one-year civil protection order (CPO), set to expire on October 15, 2025 (Dkt. 2 at 66).

Buck filed two appeals regarding the CPO. On October 23, Buck filed a Petition for a Writ of Review and Motion to Shorten Time with the Idaho State Supreme Court (Dkt. 1 at ¶¶ 12, 13), which was subsequently denied. *Buck v. Steckel*, No. 52370-2024 (Idaho Dec. 9, 2024). On October 28, Buck filed an appeal to the protective order in the Fourth Judicial District of Idaho's district court (Dkt. 1 at ¶ 13).[2]

On March 13, 2025, Buck filed the instant complaint against Judge Steckel, Ada County, and the Fourth Judicial District Court of Idaho (*id.* at 1 ¶ 1) (identifying defendants). Buck alleges the CPO and perceived procedural inadequacies in the corresponding state court proceedings violated his rights under the First and Fourteenth Amendments to the United States Constitution. 42 U.S.C. § 1983 (Dkt. 1 at 3 ¶¶ 16-17). He also alleges Judge Steckel violated Article VI of the United States Constitution and Idaho Code § 59-401 (loyalty oaths) and § 1-2221(7) (senior judge eligibility requirements) because he was unable to find an oath of office on file, leading him to the conclusion Judge Steckel was unauthorized to preside over his proceedings (Dkt. 1 at 3 ¶¶ 17-19). In addition to his complaint, Buck filed a motion for preliminary injunction, seeking to enjoin enforcement, vacate, and expunge the CPO, as well as an "expedited hearing" (Dkt. 3 at 2). As of this Order, Buck has yet to serve his complaint or preliminary injunction on any party in this case.

---

[2]    As of the time of this Order, it is unclear whether Buck's appeal of the CPO is still ongoing (Dkt. 1 at 2). According to the Idaho State Court docket, a protection order modification hearing in Buck's state case was held on September 24, 2025, after Panther filed a renewal application. *Panther v. Buck*, CV01-24-16795 (Ada Cnty. Magis. Ct.). Another hearing is scheduled for October 8. *Id.*

**MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION - 2**

For the reasons discussed below, the Court dismisses Buck's complaint with prejudice against Defendants Judge Steckel and the Fourth Judicial District Court of Idaho and without prejudice against Defendant Ada County and denies his motion for preliminary injunction as moot.

## II.    LEGAL STANDARD

Where the exercise of jurisdiction would be improper because of ongoing state judicial proceedings, the court must abstain from exercising such jurisdiction in deference to principles of comity and federalism. *Younger v. Harris*, 401 U.S. 37, 44 (1971); *see Bellotti v. Baird*, 428 U.S. 132, 143 n.10 (1976) (permitting sua sponte abstention). Likewise, a court may dismiss a pending civil action sua sponte when the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). In fact, "courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh*, 546 U.S. at 514. Upon the determination that a court lacks jurisdiction, "the court must dismiss the complaint in its entirety," including any pending state-law claims. *Id.* (holding that a court who lacks subject matter jurisdiction must dismiss "claims arising under state law that would not independently qualify for federal-court adjudication"). The plaintiff bears the burden of establishing subject matter jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

## III.    ANALYSIS

Buck complains that Defendants violated his First and Fourteenth Amendment Rights, made actionable under § 1983, as well as various Idaho statutes (Dkt. 1 at 3). Buck also alleges that Defendant Judge Steckel violated Article VI of the United States Constitution because he

issued the CPO without an oath of office on file (Dkt. 1 at 1-3). For the reasons below, the Court dismisses Buck's action because such a course of action is improper under *Younger*, 401 U.S. 37.

Even if the Court were to exercise jurisdiction, Buck's claims against the Fourth Judicial District Court of Idaho and Judge Steckel are barred by the Eleventh Amendment and the doctrine of judicial immunity, respectively. *Will v. Mich. Dep't State Police*, 491 U.S. 58, 71 (1989) (holding neither a state entity nor its officials acting in their official capacities are considered "persons" for purposes of § 1983); *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) (declaring "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts") (quoting *Bradley v. Fisher*, 80 U.S. 335, 351 (1871)). Because the Court dismisses Buck's complaint, it denies his motion for preliminary injunction as moot.

A.    **The *Younger* Doctrine**

Buck's action must be dismissed because federal courts must not interfere with ongoing state court actions. Buck seeks federal court intervention in an ongoing state civil proceeding. Specifically, he seeks immediate injunctive relief, arguing enforcement of the CPO has resulted in "reputational loss" and "disruption of a close intimate relationship" (Dkt. 3 at 2). Further, he requests a declaratory judgment that the CPO is void (Dkt. 1 at 3). Such a course of action is improper under *Younger*, 401 U.S. 37.

The *Younger* doctrine provides that federal courts must refrain from enjoining state civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013); *Younger*, 401 U.S. at 45 ("[T]he normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions."). Thus, *Younger* and its progeny "espouse a strong federal policy

against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).

For civil cases, *Younger* abstention is appropriate only when (1) there is an ongoing state proceeding; (2) the proceeding implicates important state interests; (3) the plaintiff has an adequate opportunity in the state proceeding to raise constitutional challenges, and (4) the requested relief would, in effect, enjoin the state court proceedings. *Yelp Inc. v. Paxton*, 137 F.4th 944, 950-51 (9th Cir. 2025); *Middlesex Cnty. Ethics Comm.*, 457 U.S. at 432. A state has an important interest in controlling "the processes by which the state compels compliance with the judgment[] of its courts." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13-14 (1987). Extraordinary circumstances include (1) where irreparable injury is both "great and immediate," *Younger*, 401 U.S. at 46; (2) where the state law is "flagrantly and patently violative of express constitutional prohibitions," *id.* at 53-54; or (3) where there is a showing of "bad faith, harassment, or any other unusual circumstance that would call for equitable relief," *id.* at 54.

The Court finds all four *Younger* abstention factors are present. First, Buck's civil case is ongoing.[3] Second, that the proceedings involve enforcement of a judicial order—a civil protection order in a domestic proceeding—implicates important state interests. Third, if Buck does not

---

[3]    Federal courts conduct the *Younger* analysis in light of the facts and circumstances existing at the time the federal action was filed. *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014). Buck's state court proceeding was initiated on October 2, 2024 (Dkt. 1 at 2). Buck appealed the CPO on October 28 (*id.*). On March 13, 2025, with his state court appeal pending, Buck filed this suit in federal court (*id.* at 2-3). Thus, at the time Buck filed this suit, his state court proceedings were ongoing.

prevail in state court, he has a remedy—an appeal. In other words, Buck has an adequate opportunity to raise his federal constitutional challenges in state court. Fourth, the relief Buck seeks—injunctions vacating the protective order and preventing its enforcement, as well as a declaration that the protective order is void—if granted, would effectively enjoin ongoing state proceedings. Finally, Buck's allegations do not present extraordinary circumstances justifying an exception to the *Younger* doctrine. Accordingly, the Court finds abstaining from exercising jurisdiction over Buck's case is appropriate.

### B.    Eleventh Amendment Immunity for State Agencies

The Eleventh Amendment bars suits by a person against states, state agencies, and state officials for acts performed in their official capacity. *Munoz v. Super. Ct.*, 91 F.4th 977, 980 (9th Cir. 2024); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (extending Eleventh Amendment immunity to a state and "its agencies or departments"). Furthermore, Eleventh Amendment immunity is a jurisdictional bar. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 100. Thus, "a federal court generally may not hear a suit brought by any person against a nonconsenting State." *Allen v. Cooper*, 589 U.S. 248, 254 (2020).

A judicial district has sovereign immunity as an arm of the state. *Munoz*, 91 F.4th at 980. In *Munoz*, the Ninth Circuit held that the Superior Court of California was a state agency because state law considered it so, the court derived its power from the state, and it could not be sued in an individual capacity. *Id.* (citing *Greater L.A. Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987), *superseded by statute on other grounds*). Applying those principles here, the Court concludes that the Fourth Judicial District Court is a state agency.

First, Idaho case law regards the Fourth Judicial District Court as a state agency because it encompasses state courts in several counties of the state. *See* Idaho Code § 1-805 (2025). Additionally, the Fourth Judicial District Court derives its power from the state of Idaho. *See* §§ 1-701, 1-705, 1-805 (2025) (vesting Fourth Judicial District Court with authority to resolve legal disputes in Ada, Boise, Elmore, and Valley Counties). Furthermore, the Fourth Judicial District Court receives its funding from the state treasury and state funds. §§ 1-1623, 1-1625, 1-2224. This determination is consistent with this Court's previous holdings. *See Carter v. Seventh Jud. Dist. Idaho*, No. CV08-118-E-EJL, 2009 WL 1635389, at *8 (D. Idaho June 10, 2009) (holding the Seventh Judicial District a state agency); *Bass v. Moore*, No. CV-05-182-S-BLW, 2005 WL 8165529, at *3 (D. Idaho Dec. 15, 2005) (finding the Fifth Judicial District a state agency). Ironically, even Buck's complaint identifies the Fourth Judicial District Court as the "[s]tate entity overseeing [the] defective proceedings" (Dkt. 1 at 2).

The Court finds that the Fourth Judicial District Court of Idaho is a state agency and therefore enjoys Eleventh Amendment immunity from Buck's claims under § 1983 absent a waiver of state sovereign immunity. *Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890); *Pennhurst State Sch. & Hosp.*, 465 U.S. at 100. Section 1983 does not constitute such a waiver. *Quern v. Jordan*, 440 U.S. 332, 342-44 (1979). Nor has Idaho itself waived its sovereign immunity for constitutional claims. *Esquibel v. Idaho*, No. 11-cv-00606-BLW, 2012 WL 1410105, at *6 (D. Idaho Apr. 23, 2012). Accordingly, the Court dismisses Buck's actions against the Fourth Judicial District Court with prejudice.

### C.    Judge Steckel and Judicial Immunity

Under the doctrine of absolute judicial immunity, a judge is not liable for monetary damages for acts performed in the exercise of his judicial functions. *Stump*, 435 U.S. at 355-56. Absolute immunity for judicial officers "is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988). Thus, once it is determined that a judge was acting in his or her judicial capacity, absolute immunity applies, "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986). For example, judicial immunity is not lost "by allegations that a judge conspired with one party to rule against another party: 'a conspiracy between judge and [a party] to predetermine the outcome of a judicial proceeding, while clearly improper, nevertheless does not pierce the immunity extended to judges.'" *Moore v. Brewster*, 96 F.3d 1240, 1244 (9th Cir. 1996) (quoting *Ashelman*, 793 F.2d at 1078), *superseded by statute on other grounds*. Nor is judicial immunity "overcome by allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

There are, however, two circumstances in which absolute judicial immunity does not apply. First, a judge may not rely on immunity when he or she performs an act that is not "judicial" in nature. *Stump*, 435 U.S. at 360. To determine whether a judge's actions are judicial, a court looks at (1) "the nature of the act itself, i.e., whether it is a function normally performed by a judge," and (2) "the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id.* at 362. Here, both factors indicate that Judge Steckel's issuance of the CPO was a judicial act. Buck complains of acts and decisions Judge Steckel made in the course of presiding over Panther's civil protective order action (Dkt. 1 at 1-3). More specifically, Buck claims Judge Steckel violated

his constitutional rights when, during a hearing, the Judge gave Buck's opposition more time to present evidence, admitted evidence despite Buck's objections, and issued the protective order (*id.* at 2-3). But everything complained of was performed in the exercise of Judge Steckel's judicial functions as a state court judge. Furthermore, Buck's interactions with Judge Steckel were in the context of a civil protection hearing. In other words, Buck dealt with Judge Steckel in his judicial capacity. Thus, the Court finds Judge Steckel's actions were judicial in nature.

Second, absolute immunity does not apply when a judge acts "in the clear absence of all jurisdiction." *Stump*, 435 U.S. at 357 (citation modified). When immunity is at issue, the scope of a judge's jurisdiction "must be construed broadly." *Id.* at 356. Thus, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Id.* The question of whether a judge acted in excess of his authority in making a judicial ruling is a distinct issue from the question of whether a judge acted in the clear absence of jurisdiction. Even if a judge exceeds his authority in making a judicial ruling in a particular case, that judge is immune if the case is properly before him. *Mireles*, 502 U.S. at 13.

In Idaho, the state district courts have original jurisdiction over all cases and proceedings in law and in equity. Idaho Const. art. V, § 20; Idaho Code § 1-705 (2025). A magistrate judge's jurisdiction is established by legislation, under the Idaho Constitution, by rule of the Idaho Supreme Court, and by rules of the respective district courts. *See Marks v. Vehlow*, 671 P.2d 473, 477 (Idaho 1983). Magistrate judges are authorized by statute to hear petitions for civil protection orders filed with the magistrate division of the district court. § 18-7907(2). As a magistrate, Judge Steckel has jurisdiction to issue a protection order. *See id.* § 18-7907(4). Nothing appears to have

been beyond the judge's jurisdiction. Thus, under Idaho law, Judge Steckel had jurisdiction over the type of case at issue.

Therefore, the Court holds that Judge Steckel's decisions are covered by absolute judicial immunity; he cannot be sued for violating Buck's civil rights, even if he presided over a biased hearing (and there is no evidence in the record that he did so). Accordingly, all claims against Judge Steckel are dismissed with prejudice.

### D.    Action Against Defendant Ada County

With respect to the only named Defendant—Ada County—that is not immune from future suit, Buck is permitted to amend his complaint following the pendency of his state actions. Generally, municipalities are not liable under § 1983 for the constitutional torts of their employees. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 n.7 (1978). Rather, to establish municipal liability, a plaintiff must show that the municipality had a "deliberate policy, custom, or practice" that was the "moving force" behind a constitutional violation. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007). More specifically, the plaintiff must demonstrate that (1) he suffered a deprivation of a constitutional right, (2) the municipal entity had a policy, (3) the policy amounted to deliberate indifference regarding such a right, and (4) the policy was the moving force behind the deprivation of the plaintiff's rights. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

Here, Buck fails to allege any facts connecting Ada County to the alleged violations, other than stating that Ada County "facilitated" Judge Steckel's violations (Dkt. 1 at 1), and noting that Ada County is the "[p]olitical subdivision administering the Fourth Judicial District Court" (*id.* at 2). Buck does not allege Ada County has any policy or policies that were either deliberately

indifferent or were a moving force behind his alleged deprivations. The Court also notes that, as of this Order, no Defendant has been served—in violation of Rule 4(m) (requiring the court to dismiss a complaint without prejudice if a defendant is not served within ninety days). Thus, even if the case was not dismissed under *Younger*, this failure to allege sufficient facts or execute service would call for leave to amend or dismissal. Should Buck choose to file a new action following the pendency of his state actions, he is forewarned that failure to address the aforementioned deficiencies may result in the dismissal of the case without prejudice. In other words, Buck should not re-allege his claims against Ada County in a subsequent complaint unless he has a good faith belief that he can satisfy the standards discussed above.

## IV.    ORDER

**IT IS ORDERED that:**

1.      The Court **ABSTAINS** from exercising jurisdiction over this case. Accordingly, Plaintiff's Complaint (Dkt. 1) is **DISMISSED without prejudice as to Defendant Ada County**.

2.      This case is **DISMISSED with prejudice** as to **Defendants Judge Steckel and the Fourth Judicial District Court**.

3.      Buck's Motion for Preliminary Injunction (Dkt. 3) is **DENIED as moot**.

DATED: October 08, 2025

Amanda K. Brailsford
Amanda K. Brailsford
U.S. District Court Judge